UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

JOHN L. HUTCHINS,

                   Defendant.
_____

**REPORT, RECOMMENDATION AND ORDER**

Case No. 1:22-cr-42-JLS-JJM

        Defendant John L. Hutchins is charged in an eleven-count indictment [1][1] with various crimes related to the Paycheck Protection Program ("PPP"). Before the court are Hutchins' motion to dismiss Count 11 of the indictment (Ginter declaration [23], §I) and to suppress statements (id., §II), along with the government's cross-motion for reciprocal discovery. *See* Government's Response [25] at 19-20.[2] Having considered the parties' submissions [23, 25, 26, 35] and heard oral argument on March 29, 2023 [33], for the following reasons the government's cross-motion is granted, and I recommend that Hutchins' motions be denied.

**DISCUSSION**

**A.    Sufficiency of Count 11**

        "The standard for the sufficiency of an indictment is not demanding . . . and requires little more than that the indictment track the language of the statute charged and state the

---

[1]    Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]    All other portions of Hutchins' pretrial motion [23] were deemed resolved. *See* March 29, 2023 Text Order [34].

time and place (in approximate terms) of the alleged crime." United States v. Willis, 14 F.4th 170, 187, n. 7 (2d Cir. 2021), cert. denied, 142 S. Ct. 2660 (2022); Fed. R. Crim. P. ("Rule") 7(c)(1).

Count 11 of the indictment charges Hutchins with violating 18 U.S.C. §1001(a)(2), which provides that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title [and/or] imprisoned not more than 5 years".

In moving to dismiss that Count, Hutchins argues that "[n]owhere in the indictment is it alleged that Mr. Hutchins acted willfully" (Ginter declaration [23], ¶6), ignoring the fact that the indictment specifically alleges that he "did *knowingly and willfully* make a materially false, fictitious, and fraudulent statement and representation to a Special Agent of the Federal Bureau of Investigation and to an Investigator of the United States Attorney's Office, that is, the defendant falsely denied applying for, or authorizing anyone to apply for, any EIDL or PPP loans, with the possible exception of one PPP loan for Rapids Theater". [1], ¶40 (emphasis added).

Hutchins next argues that "to violate §1001, a person must know that it is unlawful to make such a false statement", and that "the indictment fails to allege that Mr. Hutchins acted willfully with knowledge that his conduct is unlawful". Ginter declaration [23], ¶¶5, 7. However, knowledge of unlawfulness is inherent in the definition of "willful". See Bryan v. United States, 524 U.S. 184, 191-92, 196 (1998) ("in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful . . . . [K]nowledge that the conduct is unlawful is all that is required"). "While

Bryan involved a federal firearms conviction, this court has recognized that its definition of willfulness is generally applicable." United States v. Kukushkin, 61 F.4th 327, 332 (2d Cir. 2023).

If a word or phrase used in a statute is a term of art, its "component parts . . . need not be alleged to render [the] indictment sufficient". United States v. Wicks, 187 F.3d 426, 428 (4th Cir. 1999). 18 U.S.C. §1001(a)(2) prohibits "knowingly and willfully" making a materially false statement, and the words "'willfully and knowingly' . . . are terms of art used in statutes too numerous to recite. Inasmuch as these terms do not change from statute to statute or indictment to indictment, they are definite enough in legal meaning to give defendant notice of the charge". United States v. Carrier, 672 F.2d 300, 303 (2d Cir. 1982). Therefore, the indictment need not separately allege that Hutchins knew that his false statements were unlawful.

Hutchins' third argument is that willfulness requires that he have been "advised by law enforcement that a false statement [is a] federal crime". Ginter declaration [23], ¶8. He contends that "Due Process requires that [he] be provided notice of the fact that it is a crime to make a false statement under §1001", and that "First Amendment protection of speech cannot be removed based on the status of the person spoken to without notice that such activity is criminal". Hutchins' Reply [26] at 2.

I disagree. Willfulness only requires knowledge that the conduct at issue is unlawful, and "unlawful acts . . . need not be 'criminal' or 'illegal'". Value Trailer Corp. v. Auto-Reconstrutora Do Barreiro, LDA, 1989 WL 46694, *2 (N.D. Ohio 1989); Weis Markets, Inc. v. United Food and Commercial Workers Union, Local. 400, AFL-CIO, CLC, 583 A.2d 1092, 1095 (Md. App. 1991) (same); Black's Law Dictionary (11th ed. 2019) (defining

"unlawful" as "[n]ot authorized by law; illegal" *or* "[i]nvolving moral turpitude", and "moral turpitude" as "[c]onduct that is contrary to justice, honesty, or morality").

"[A] statute's willfulness requirement does not require the government to prove specific intent [to commit a crime] unless the statute is highly specialized and complex and implicates seemingly innocent conduct." United States v. Kukushkin, 61 F.4th 327, 333 (2d Cir. 2023). 18 U.S.C. §1001(a)(2) is neither highly specialized nor complex, and does not "implicate seemingly innocent conduct" - for to sustain a conviction under §1001(a)(2), "the government is required to show that the misrepresentation was not made innocently or inadvertently". United States v. Curran, 20 F.3d 560, 567 (3d Cir. 1994). Therefore, "nothing in the language or structure of 18 U.S.C. §1001 suggests that 'willfully' requires proof that a defendant knew his conduct was a crime". United States v. Whab, 355 F.3d 155, 161 (2d Cir. 2004).[3]

Although the Second Circuit in Whab cautioned that it "need not decide the issue, a matter of first impression in this Circuit" (id. at 162), its subsequent decision in United States v. Carrasquillo, 239 F. App'x 634 (2d Cir. 2007) treats the question as resolved. "Willfulness relates to the making of the false statement, not to knowledge that the statement would violate a law . . . . [N]othing in the language or structure of 18 U.S.C. §1001 suggests that 'willfully' requires proof that a defendant knew his conduct was a crime". Id. at 636.

Hutchins argues that Carrasquillo "is a Summary Order, which is not binding on this Court". Hutchins' Letter Brief [35] at 1. However, "since summary orders are meant to be used only when the law on a given topic is settled, [they] presumably provide particularly good

---

[3] Nor can "free speech considerations" add to Rule 7(c)(1)'s requirement that the indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged". Carrier, 672 F.2d at 303.

evidence of what legal principles the Second Circuit considers as established at any given point in time." Bell v. Luna, 856 F. Supp. 2d 388, 401, n. 3 (D. Conn. 2012).[4]

In suggesting that the Due Process clause and the First Amendment require notice that giving a false statement is a crime, Hutchins argues that "all other false statement crimes[,] such as perjury, require the due process notice to be alleged". Hutchins' Letter Brief [35] at 1. Not true. "Although section 1621 [18 U.S.C. §1621, criminalizing perjury] uses the term 'willfully' as the scienter element of the offense, willfulness has been interpreted to mean only that the defendant knew that the offending statement was false, and does not require . . . knowledge that defendant's conduct violated the law." 2 Sand, *et al*, Modern Federal Jury Instructions (Criminal), §48.01.

Finally, Hutchins argues that the indictment must allege that he knew that his false statement was being made to government agents. However, since this argument was raised only at oral argument rather than in his motion, I will not consider it. *See* Standard General L.P. v. Travelers Indemnity Co. of Connecticut, 261 F. Supp. 3d 502, 511 (S.D.N.Y. 2017) ("[t]his Court need not consider an argument raised for the first time at oral argument"). For these reasons, I recommend that Hutchins' request for dismissal of Count 11 be denied.

---

[4]     *See* Wang v. Hearst Corp., 877 F.3d 69, 76, n. 2 (2d Cir. 2017) (citing a "summary order reflecting settled law"); United States v. Siraj, 533 F.3d 99, 100 (2d Cir. 2008) ("[b]ecause most of [the] arguments are defeated by well settled law, we consider them in an accompanying summary order"). United States v. Triumph Capital Group, Inc., 487 F.3d 124, 127 (2d Cir. 2007) ("these challenges are governed by settled law, and we consider and reject [them] in a summary order accompanying this decision").

B.     **Suppression of Statements**

A court is "not required as a matter of law to hold an evidentiary hearing if . . . [the] moving papers d[o] not state sufficient facts which, if proven, would . . . require[ ] the granting of the relief requested". United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969). *See also* United States v. Merced, 2021 WL 5647827, *15 (S.D.N.Y. 2021) ("a defendant seeking a hearing bears the burden of demonstrating . . . that there are material facts in dispute, which, if proven through a hearing, would require the granting of relief").

To establish his entitlement to a suppression hearing, Hutchins submitted an initial Affidavit in connection with his motion [24], as well as a belated supplemental Affidavit [26-1] detailing the events of November 2, 2020. He alleges that on or about November 2, 2020, he was initially contacted by an FBI agent, who "refused to meet" him at the location of his choosing, and instead "directed the date, time, and location" of their meeting, which occurred on November 2, 2020 at the Tim Hortons restaurant in Niagara Falls. Hutchins' Affidavit [24], ¶3; Hutchins' supplemental Affidavit [26-1], ¶4. He was met at the restaurant by members of the FBI and United States Attorney's Office, and they sat at a small inside table, with one member of law enforcement seated "directly in front" of him and one to his "side". Id., ¶¶5, 6.

The law enforcement personnel present provided him with their identifications, which prompted him to become concerned that he was "the subject of some sort of criminal investigation", but he was "assured that [he] was not the subject of any investigation". Hutchins' Affidavit [24], ¶5; Hutchins' supplemental Affidavit [26-1], ¶7. He was not given his Miranda warnings, informed that he was free to leave, or told that he did not have to answer their questions. Hutchins' Affidavit [24], ¶7; Hutchins' supplemental Affidavit [26-1], ¶¶8, 10.  Based on his "conversations with law enforcement both telephonically and in person", he states that "I

felt that I had no option but to answer the question[s] posed to me and that I was not free to leave". Hutchins' Affidavit [24], ¶6; Hutchins' supplemental Affidavit [26-1], ¶9. At oral argument, Hutchins' attorney confirmed that he was seeking suppression based on the absence of Miranda warnings.

"A suspect is entitled to Miranda warnings only if he or she is interrogated while 'in custody.'" Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998). The government argues that Hutchins' motion to suppress his November 20, 2020 statements should be denied without an evidentiary hearing because he fails to establish that he was in custody at the time of this questioning. See Government's Response [25] at 5-7. I agree.

While Hutchins may not have felt that he was free to leave under the circumstances (Hutchins' Affidavit [24], ¶6; Hutchins' supplemental Affidavit [26-1], ¶9), "[t]he free-to-leave inquiry" is not determinative. United States v. Newton, 369 F.3d 659, 670 (2d Cir. 2004). The critical issue for determining if person was in custody for Miranda purposes is "whether a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest". United States v. Jabar, 19 F.4th 66, 83 (2d Cir. 2021), cert. denied, 142 S.Ct. 1396 (2022). See also United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969) ("in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so"); Berkemer v. McCarty, 468 U.S. 420, 440 (1984) ("the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest"). "Relevant considerations include: (1) the interrogation's duration; (2) its location (*e.g.*, at the suspect's home, in public, in a police station, or at the border); (3) whether the suspect

volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion." Jabar, 19 F.4th at 83.

   The circumstances described by Hutchins were not equivalent to the hallmarks of formal arrest. He does not claim that the duration of the interrogation was unduly long, that restraints were used, that he was threatened or intimidated in any way, or that firearms were visible or drawn. See United States v. Efthimiatos, 799 F. App'x 75, 76–77 (2d Cir. 2020) (Summary Order) ("[a] reasonable person in Efthimiatos's position would have felt free to leave, and the questioning did not bear the major hallmarks of formal arrest. At no time during the questioning did the agents tell him he was under arrest or otherwise not free to leave. They were dressed in civilian clothing, did not display their weapons, and maintained a conversational tone throughout. Efthimiatos was not physically restrained or touched at all. He moved freely to and from the vehicle in which some of the questioning occurred"). While Hutchins was not expressly told that he was free to leave, he was "assured" that he was "not the subject of any investigation", an equally strong indication that he was not in custody. Hutchins' Affidavit [24], ¶5; Hutchins' supplemental Affidavit [26-1], ¶7.

   At oral argument, Hutchins' attorney relied heavily on the fact that Hutchins was directed by the FBI as to where and when to meet. However, the meeting occurred at a public restaurant, and Hutchins was told that he was not the subject of any investigation. Hutchins also points to the fact that he was seated at a small table with law enforcement agents seated directly across and beside him, but there is no indication that this prevented him from leaving. *Compare with* United States v. Abbas, 418 F. Supp. 2d 280, 286 (W.D.N.Y. 2006) (finding that the defendant's freedom of movement was restricted akin to a formal arrest where the agent "stood

and blocked the door to the outside of the store"). Nor is there any "suggestion that, at any point, [he] attempted to terminate the interview or was prevented from doing so". Jabar, 19 F.4th at 84. Considering all of the circumstances, no reasonable person in Hutchins' position would conclude that he was in custody. Therefore, I recommend that the motion be denied without a hearing.

C.    The Government's Cross-Motion for Reciprocal Discovery

The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b). Government's Response [25] at 19. "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Hutchins has not opposed this request. Therefore, it is granted.

Pursuant to Federal Rule of Evidence 807, the government also asks that Hutchins provide "advance disclosure of any statement(s) [he] proposes to utilize at . . . trial". Government's Response [25] at 19. Since Hutchins has also not opposed this request, it is granted.

## CONCLUSION

For these reasons, the government's cross-motion for reciprocal discovery (government's Response [25] at 19-20) is granted, and I recommend that Hutchins' pretrial motions to dismiss Count 11 of the indictment (Ginter Declaration [23], §I), and to suppress statements (id. at §II) be denied.

Unless otherwise ordered by District Judge John L. Sinatra, Jr. any objections to this Report, Recommendation and Order must be filed with the clerk of this court by April 28, 2023. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

Dated: April 14, 2023

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge